## CHARLES CROOKER *versus* THEODORE S. TREVETT.

The simple omission of certain items, the property of the bankrupt, in his schedule of assets is not alone sufficient to sustain the allegation, " that the defendant fraudulently omitted in his schedule of assets " that property.

In an action upon a note, where the defence set up is bankruptcy, and the answer to it is, that the defendant fraudulently omitted certain property belonging to him, in his schedule ; an instruction to the jury, that if they believed the defendant *" considered"* this property, to be the property of another person named, then they should find a verdict for the defendant, is erroneous, as it might mislead the jury.

THIS case came before the Court, upon exceptions and upon a motion for a new trial, because the verdict was against evidence.

Assumpsit upon a note of hand, dated Feb. 6, 1841, for $215,24. The writ was dated June 9, 1845. The defendant pleaded bankruptcy, to which the plaintiff replied, " that the defendant fraudulently omitted in his schedule of assets a claim against one David Ingalls, and also one share in the whaling bark Massassoit, valued at one hundred dollars, of which due notice was given to the defendant." The schedule of effects was dated Feb. 7, 1842, and the discharge in bankruptcy, on Feb. 28, 1843.

Several witnesses were examined. WHITMAN C. J., presiding at the trial, as the exceptions state, instructed the jury as follows : —

" 1. That if they did not believe the defendant had been guilty of wilful concealment, they should find for the defendant.

" 2. If they believed the whale share was the property of Magoun, the witness, or that the defendant considered this share the property of Magoun, then they should find a verdict for the defendant."

The jury returned a verdict for the defendant, and thereupon the plaintiff's counsel filed exceptions.

*Tallman & Richardson,* for the plaintiff, argued, that a new trial should be granted, because the presiding Judge erred in instructing the jury, that if, " the defendant *considered* this share the property of Magoun, then they should find a verdict for the defendant." The testimony does not warrant any such instructions. He knew whether it was, or was not his property.

They also contended, that there should be a new trial granted, because the verdict was not only without evidence, but also against evidence.

*Randall,* for the defendant, contended that the instructions were correct.

By the bankrupt act, § 4, it is provided, that the discharge shall only " be impeached for some fraud or wilful concealment of property or rights of property." Not returning property as his own, which he believed was not his, but belonged to another, is neither a fraud nor a wilful concealment. There could be no concealment of property which he did not know was his.

The opinion of the Court, WELLS J. concurring in the result, granting a new trial, on the ground only that the verdict was against the evidence, was drawn up by

TENNEY J.— It is not denied that the defence should prevail, unless the defendant's discharge in bankruptcy, was im-

peached " for some fraud or wilful concealment of property, or rights of property." Bankrupt Act of U. S. of Aug. 19, 1841. This he attempted to do under his replication to the defendant's plea, that " the defendant fraudulently omitted in his schedule of assets a claim against one David Ingalls and also one whole share in the whaling bark Massassoit, valued at one hundred dollars." The evidence of discharge being perfect and in proper form, it was necessary for the plaintiff to prove what he had alleged in his replication, to entitle him to a verdict. The simple omission of certain items, the property of the bankrupt, in his schedule is not alone sufficient to sustain the allegation. They may have been forgotten, or omitted under an honest, though erroneous belief, that he had no interest whatever in the property.

The instructions to the jury were, 1st, that if they did not believe the defendant had been guilty of wilful concealment, they should find for the defendant; and 2d, if they believed the whale share was the property of the witness, or that the defendant considered this share the property of the witness, then they should find a verdict for the defendant. It was implied, that if there was a wilful concealment of the property of the defendant, or if the whale share was the property of the defendant, and he knew it to be so, under the evidence the result would have been otherwise. The jury must have found, by returning a verdict for the defendant, either that there was no wilful concealment; or that the whale share did in fact belong to another; or that the defendant considered that it belonged to another.

It is not easy to conceive, that a concealment of property can be fraudulent unless it is wilful. Fraud cannot exist, without some operation of the mind and the will; and where an act is done, which is fraudulent, that act must be the result of the will. But the omission may have been wilful, and not fraudulent. If the term " concealment" does not imply in the bankrupt act any more than omission, wilful concealment is the same as wilful omission. If the legitimate

meaning of concealment is a fraudulent omission, the implied instruction of the Judge was, that if the defendant was guilty of a fraudulent and wilful omission to put upon his schedule the whale share, the verdict must be for the plaintiff. If the term concealment signifies simply omission, the instruction was less favorable to the defendant than he was entitled to claim. The first instruction was unobjectionable.

The latter clause of the second instruction, we think may have been so understood by the jury as to be erroneous. By this clause the defendant was entitled to a verdict, "if he considered the whale share the property of another." It is not easy to ascertain with entire certainty the meaning of this clause. The word "consider" is often used to express an idea which exists in the mind, with perfect distinctness, but it does not always convey to the understanding of the person to whom it is addressed, one which is very precise. The clause may be used to express the deliberate and sincere opinion, that another was in fact the entire owner of the property and exclusively interested therein as the owner ; and in this sense the Court probably used the language in the instructions. A person to secure his property, so that it shall not be taken in payment of his debts, may by solemn instruments transfer it to a friend, expecting to have all the essential use, as he had before. If he supposes, that this property has been legally transferred, he may with propriety say that he considers it the property of another, although *bona fide*, it is otherwise. The language being susceptible of this interpretation, we think the exceptions should be sustained.